**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Matthew T. Theriault (SBN 244037)
mtheriault@clarksonlawfirm.com
Bahar Sodaify (SBN 289730)
bsodaify@clarksonlawfirm.com
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA CHESLOW and STEVEN PRESCOTT, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>NESTLE USA, INC. and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No. 5:19-cv-07471-BLF<br><br><u>FIRST AMENDED CLASS ACTION COMPLAINT</u><br><br>1.  VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE SECTION 17200, *et seq*.<br>2.  FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17500, *et seq*.<br>3.  VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE SECTION 1750, *et. seq*.<br><br><u>DEMAND FOR JURY TRIAL</u> |

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

## INTRODUCTION

1.      Plaintiffs Linda Cheslow ("Cheslow") and Steven Prescott ("Prescott"), individually and on behalf of all other similarly situated purchasers (the "Class") of Nestle® Toll House's Premier White Morsels (the "Product") bring this class action against Nestle USA, Inc. ("Nestle" or "Defendant") and Does 1 through 10, inclusive (collectively, "Defendants"). The gravamen of this lawsuit is that Nestle's advertising, marketing, labeling, and placement of its "Premier White Morsels" misleads and deceives reasonable consumers into believing that the Product is real white chocolate. The Product, however, contains no cacao or cocoa, i.e., chocolate, in any form or in any quantity. Rather, the Product is made of sugar, palm kernel, oil and milk, ingredients that are far cheaper than any cocoa/cacao ingredients, which ingredient the Food and Drug Administration mandates be included in any product labeled as "white chocolate." Under California law, companies like Nestle are liable for false advertising claims if the labeling has the *capacity* to deceive or mislead reasonable consumers without requiring that the representations are *actually* false. Here, the deception stems from the Product label and website (the "Premier White" label, graphical display of white chips, and baking recipes) and the Product's placement (among and in-between real chocolate products). These facts, applicable to Cheslow, Prescott, and the putative class of reasonable consumers, demonstrate Nestle's intent to mislead and deceive the public into believing the Product is real white chocolate.

2.      Nestle does not include "White" on the Product label merely to describe its fake chocolate's color. Indeed, neither real white chocolate nor Nestle's fake white chocolate is, objectively speaking, white in color. Nestle intentionally uses the term "White" to capitalize on consumers' common understanding of well-established chocolate labeling. Since the 1930's, chocolate has been distinctly labeled based on the chocolate's physical makeup: (1) milk chocolate; (2) dark chocolate; (3) semisweet chocolate; and (4) white chocolate. White chocolate is distinguished from these other chocolates in that it contains much higher percentages of cacao butter and smaller percentages of cocoa powder, which gives it its lighter, yellowish color (which, in 1930, was named "white" chocolate by its creator, **Nestle**). Not only does white chocolate contain

cacao (i.e., chocolate) as a matter of fact, the Food and Drug Administration has set strict guidelines on the labeling of chocolate based on their differences in cacao/cocoa percentages. Nestle intentionally used the "White" labeling to capitalize on consumers' understanding of these well-established chocolate descriptors.

3.      Not only did Nestle create a cheaper product that contained no chocolate, but it then deceptively passed it off as the real thing by placing its fake white chocolate product among real chocolate products, including the ones it manufactures and sells. Not only were Cheslow, Prescott, and other reasonable consumers deceived by the "White" label and the Product's intentional placement with real chocolate products, they were otherwise prevented from learning of the Product's true, non-chocolate nature. For instance, Nestle sold this cheap knock-off for the same premium price as its other real chocolate products. For these reasons, Plaintiff, the prospective class members, and consumers as a whole purchased the Product reasonably believing that the product was white chocolate.

4.      Plaintiffs are reasonable consumers who were deceived by Nestle's advertising, labeling, and product placement schemes specifically targeting consumers' desire for real white chocolate. Upon information and belief, there are thousands of other reasonable consumers who have been misled by Nestle's deceptive and unfair practices.

## **WHAT IS CHOCOLATE**

5.      Chocolate is derived from Theobroma cacao, also known as the cacao tree or cocoa tree. The cacao/cocoa tree, native to central Mexico, grows upwards to 30 feet. It produces a pod-like fruit which, when matured, contains about 40 to 50 beans.

6.      All forms of chocolate are derived from cacao beans and only cacao beans. To create chocolate, the cacao beans are separated from the pod and the pulp within the pod. The beans then go through a process of fermentation, drying and roasting. The roasted beans are then crushed allowing the removal their outer hulls. What remains – the nibs – are ground together to form a paste-like chocolate liquor. This chocolate liquor is the starting point of all chocolate products. It is mixed with other ingredients, including sugar, milk, additional cacao fat or butter (cacao beans

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

contain cacao fat/butter), and various spices, which when blended together with emulsifiers, create the final chocolate product consumers purchase.

7.      For nearly a century, the type of chocolate consumers purchase has had uniform, commonly-understood names or designations:

a.      "Chocolate liquor" is 100% cacao/cocoa, containing no added ingredients, the raw result from processing the cacao beans, as described;

b.      "Milk chocolate" combines chocolate liquor (including cocoa solids and cacao butter) with sugar, milk and an emulsifier (soy lecithin). Under today's Food and Drug Administration mandates, "milk chocolate" must contain at least 10% chocolate liquor and 12% milk. 21 C.F.R. § 163.111(a)(2);

c.      "Dark chocolate" combines chocolate liquor and sugar. It is darker than milk chocolate due to the absence of milk. To be properly labeled as "dark chocolate," it must contain at least 15% chocolate liquor. 21 C.F.R. § 163.123(a)(2)[1];

d.      "Semisweet chocolate" and "bittersweet chocolate" must contain at least 35% chocolate liquor. 21 C.F.R. § 163.123(a)(3); and

e.      "White chocolate" must contain at least 20% cacao fat and at least 3.5% of milkfat under the FDA. 21 C.F.R. § 163.124.

## HISTORY OF CHOCOLATE PRODUCTION

8.      Archeological evidence demonstrates that Mesoamericans were processing and consuming cacao/cocoa since 1400 BC. Cacao/cocoa includes, among other things, phenylethylamine, a chemical which, when ingested, triggers pleasure enhancing endorphins in the brain. Early Mesoamericans also learned that cocoa could be fermented into an intoxicating alcohol. Cocoa became so highly prized that cocoa beans became the currency of the Aztecs when they ruled central Mexico.

9.      The Spanish discovered the intrinsic properties of cocoa and introduced it to Europe in the 1500s. The Spanish processed cocoa with cane sugar, resulting in a product closely

---

[1] Premium dark chocolate often contains a much higher percentage of chocolate liquor.

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

resembling the chocolate that is eaten today. Chocolate trade quickly spread throughout Europe and, later, the US.

10.     Chocolate's popularity made it a commodity. The industrial revolution allowed companies like Nestle, Cadbury, and Hershey to mass-produce chocolate products. Mass-production resulted in lower prices, meaning greater percentages of the population began enjoying chocolate products.

11.     Today, chocolate is a $40B global industry, and the US controls $13B. On average, each American consumes one pound of chocolate per year.

12.     There is evidence demonstrating the positive, physical effects of chocolate on humans, which is why the product has been sought after for thousands of years. Chemicals in chocolate have been shown to trigger euphoria, the same endorphins that trigger the "in love" feeling in humans, which is why, not surprisingly, chocolate is a favorite gift on Valentine's Day. In surveys measuring flavors, chocolate consistently remains the favorite. It not only tastes wonderful, but chocolate contains healthy antioxidants. Chocolate's ability to increase alertness and energy is well-documented, which is why chocolate has been standard issue to US servicemen since George Washington. The effects of chocolate are so well-known, it has been an integral part of the cultural psyche since the Aztecs. Even modern examples, like the 1971 film Willy Wonka & the Chocolate Factory and the 2000 film Chocolat, reference chocolate's impact on the culture. Diners would be hard-pressed to review a dessert menu that did not contain at least one chocolate dessert.

13.     Chocolate is perceived by reasonable consumers to be a unique, irreplaceable product. The Plaintiffs, the proposed class, and reasonable consumers as a whole do not consider chocolate to be some pedestrian ingredient in the baking aisle of the grocery market. When baking, flour, sugar, baking powder, butter, etc., are all important, but when consumers bake with chocolate, chocolate is the central ingredient; i.e., "*chocolate* cake," "*chocolate* soufflé," "*chocolate* chip cookies," etc. The Plaintiffs, the proposed class, and reasonable consumers as a whole thought they were purchasing real chocolate, not a cheap knock-off pretending to be chocolate.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

## WHITE CHOCOLATE IS CHOCOLATE

14.     Consistent the industry's classification of chocolates, *supra*, Plaintiffs, the prospective class members, and consumers as a whole understand that "white chocolate" contains chocolate derived from cocoa or cacao. White chocolate was introduced by Nestle in the 1930s.

15.     The Food and Drug Administration ("FDA") has issued regulations defining "white chocolate," and those regulations have been adopted by the State of California as part of the Sherman Food, Drug, and Cosmetic Law, California Health and Safety Code § 109875, *et seq*. Specifically, the FDA defines white chocolate as follows:

> (1) White chocolate is the solid or semi plastic food prepared by intimately mixing and grinding cacao fat with one or more of the optional dairy ingredients specified in paragraph (b)(2) of this section and one or more optional nutritive carbohydrate sweeteners and may contain one or more of the other optional ingredients specified in paragraph (b) of this section. White chocolate shall be free of coloring material. (2) White chocolate contains not less than 20 percent by weight of cacao fat…The finished white chocolate contains not less than 3 .5 percent by weight of milkfat...

Title 21 Code of Federal Regulations Section 163.124.

16.     One of the reasons the FDA established the foregoing standard of identity for white chocolate was due in part to "[r]educing economic deception and promoting honesty and fair dealing in the interest of consumers."[2]

## SUMMARY OF ACTION

17.     Nestle is a multi-billion-dollar company[3] and a highly visible competitor in the global chocolate market. In 2018, Nestle generated approximately $92 billion dollars worldwide and approximately $27 billion dollars in the United States. *Id.*

18.     Nestle's profits are attributable, in part, to deceptive labeling and advertising of the Product as containing white chocolate.[4] In reality, the Product does not contain *any* white chocolate.

---

[2] *See, White Chocolate; Establishment of a Standard of Identity* (October 4, 2002), Federal Register: The Daily Journal of the United States Government, https://www.federalregister.gov/d/02-25252/p-7 (last visited January 22, 2020).

[3] *See* Nestle's Annual Report to Stockholders and Other Reports, https://www.nestle.com/asset-library/documents/library/documents/financial_statements/2018-financial-statements-en.pdf  (last visited January 22, 2020).

[4] *See* screenshots from Defendant's official website, https://www.verybestbaking.com/products/4028/tollhouse/nestle-toll-house-premier-white-morsels (last visited January 22, 2020).

6

1

2

3

4

5

6

7



CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

8      19.     Nestle advertises on its Product packaging and official website that the Product has

9  white chocolate chips and labels it "*Premier* White," misleading consumers into thinking that the

10  Product contains premier ingredients, not fake white chocolate. In fact, "premier" is defined as

11  "first in position, rank, or importance."[5] Reasonable consumers do not expect that the Product

12  contains fake white chocolate, or inferior ingredients such as hydrogenated oils. Indeed, Nestle is

13  synonymous with *chocolate*, not oil.

14      20.     Nestle manufactures other chocolate varieties of the Product and labels them by type

15  of chocolate: "milk chocolate," "dark chocolate," and "semi-sweet." The "white" in "white

16  morsels" deceives reasonable consumers to believe it represents the type of chocolate in the

17  Product, white chocolate. True and correct representations of some of Defendant's other versions

18  of the Product within the same product line[6] are depicted below.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25

26  [5] *Premier,* MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/premier (last
    visited on January 22, 2020).

27  [6] There are nine versions of the Product within the same product line, including the Product: Dark
    Chocolate, Milk Chocolate, Semi-Sweet Chunks, Premier White, Bittersweet Chocolate, Peanut

28  Butter & Milk Chocolate, Semi-Sweet Chocolate Minis, Semi-Sweet Chocolate, and Triple Chip.

7

FIRST AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069



22    21.    Consumers are indeed interested in the type of chocolate when it comes to baking

23   and rely on Nestle's product packaging and labeling to determine which product to purchase.

24    22.    Reasonable consumers are not only likely to be deceived by the Product labeling and

25   advertising to think it is white chocolate, but they are actually being deceived. When news of this

26   lawsuit broke and a well-known consumer protection website disclosed the fact that the Product

27
28

does not contain white chocolate,[7] nearly 1,000 consumers complained and/or asked to be added to the lawsuit because they too had been deceived by the Product label, including by way of example and without limitation, the following:

a.  "Please add me! I use both the milk chocolate and the white chocolate in my recipes. This is very unfortunate because Nestle's is considered one of the best companies to get your product from. Now they can't be trusted!" *See* Figure 1, *infra*.

b.  "I bet I've bought 100's of these. I use them for cookies, dipping and even for making decorations. Very disappointed in Nestles. They are the only brand I buy." *See* Figure 2, *infra*.

c.  "Nothing is safe anymore everything's imitation. Please add me on." *See* Figure 3, *infra*.

d.  "I only like white chocolate and that's the reason I purchased this many many times please add me to any lawsuit don't like being taken advantage of" *See* Figure 4, *infra*.

e.  "I have bought these many times, I'm very surprised to learn that they are fake. I trusted Nestle, and am very disappointed." *See* Figure 4, *infra*.

f.  "Please add me I purchased these several times and especially around Christmas time when I do excessive baking and very upset to hear that they are not real shame on you all!" *See* Figure 4, *infra*.

g.  "I had no idea they weren't real. Honestly baking as much as I do I actually should have known this because of the difference in the melting between the Nestle chips and the white disks. The Nestle chips have to have some form of an oil in them." *See* Figure 4, *infra*.

h.  "I bake cookies. A lot-all the time. I make the macadamia nut cookies which use white chocolate chips. I use the best ingredients in my baking. Real chocolates. Nestle

---

[7] *See* Brigette Honaker, *Nestle Class Action Says White Chocolate Chips are Fake*, Top Class Actions, https://topclassactions.com/lawsuit-settlements/consumer-products/food/921875-nestle-class-action-says-white-chocolate-chips-are-fake/comment-page-1/#comments (last visited January 22, 2020).

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

cost more than the other brands. But if all I'm getting is something like almond bark. Not real chocolate. It's not fair to the consumer who trust Nestle to label their products correctly. Add me!!" *See* Figure 5, *infra*.

i.  "I have been telling people my baked goods have white chocolate on them and now to find out that is not the case is upsetting. Please add me." *See* Figure 6, *infra*.

j.  "So disappointed in Nestle I been buying this product for many years thought it was real not artificial white chocolate add me to this lawsuit" *See* Figure 7, *infra*.

k.  "If the chips aren't chocolate…what are they? Add me." *See* Figure 7, *infra*.

l.  "I actually bought these last year and then again a month ago for my granddaughters birthday, she loves white chocolate, but they didn't melt or act like the regular chocolate chips and when she tasted them…she said Grandma they're fake…….. so upon reading the ingredients and labels, Nestle has done us all dirty with false labels and fake ingredients…. shame on you Nestle" *See* Figure 8, *infra*.

m.  "Please add me. Nestle is always my favorite for chips whether milk, white or dark. And to find out they can't be trusted?"!!" *See* Figure 9, *infra*.

**Figures 1-9** (below): Screenshots taken from the Top Class Actions official website revealing that consumers are misled by Nestle's labeling and advertising of the Product to believe the Product contains real white chocolate, not fake white chocolate.

**_Figure 1._**



FIRST AMENDED CLASS ACTION COMPLAINT

1    **_Figure 2._**

2

3    

4

5

6

7    **_Figure 3._**

8

9

10

11

12

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

1

*Figure 4.*

2

3



4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

*Figure 5.*

21



22

23

24

25

26

27

28

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

12

1

***Figure 6.***

2

3

4

5



6

***Figure 7.***

7

8

9

10

11

12

13

14



15

***Figure 8.***

16

17

18

19

20

21

22



23

***Figure 9.***

24

25

26

27

28



CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

13

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

23.     Nestle is aware that reasonable consumers are misled into believing the Product contains white chocolate when it actually contains fake white chocolate but has thus far refused to make any labeling and advertising changes to dispel the consumer deception.

24.     For example, one consumer complained directly on Nestle's official website, stating, "[N]ot white chocolate so what makes these 'premium'? These don't have chocolate in them and don't taste like white chocolate. When looking they aren't real white chocolate chips. I was fooled by the 'premium' label. There's nothing premium about this product at all. It isn't chocolate and it still has artificial flavors in it and hydrogenated oils!" True and correct representations of the consumer reviews of the Product on Nestle's official website are depicted in Figure 10, *infra*.

25.     Another consumer complained, "I love white chocolate, but these don't melt[.] I was making white chocolate covered buckeyes and ran out of white chocolate melting discs. I had a couple bags of Nestle Toll House white chocolate chips and figured it would work the same. WRONG! I melted slowing in 30-45 second intervals, and it just ended up as one big clump. So disappointed." *See* Figure 10, *infra*.

26.     Yet another consumer complained on Nestle's website, "Note: this is not white chocolate. I wish the label included the word 'imitation' or 'chocolate flavored' like the fake semi-sweet morsels do. Then I wouldn't have expected it to melt like white chocolate. I threw it out after trying to melt it for peppermint bark. I added whipping cream in an attempt to save the dry crumbles and it turned to creamy rubber. Not spreadable. They'd probably be good in cookies, if you're into imitation white chocolate. I'll know next time to look for a product that has cocoa butter in the ingredients list." *See* Figure 11, *infra*.

///

///

///

///

///

///

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

**Figures 10-11** (below): Screenshots taken from Nestle's official website revealing that consumers are misled by Nestle's labeling and advertising of the Product to believe the Product contains white chocolate, not fake white chocolate.

*Figure 10.*



*Figure 11.*



CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

27.     Many consumers purchase the Product to bake with. In fact, Defendant advertises on its official website, as well on the Product packaging, baking recipes that require the use of the Product. However, because the Product contains fake white chocolate, it does not melt like real chocolate. Yet, the Product's deceptive labeling and advertising leads reasonable consumers to believe that the Product is real white chocolate and should therefore melt during baking. Thus, consumers are surprised when the Product does not melt. True and correct representations of the consumer reviews of the Product not melting as expected on Nestle's official website are depicted in Figures 12-14 below.

28.     Nestle is aware that the Product does not melt because consumers have complained directly on its website that the Product does not melt as expected from real white chocolate. *See* Figures 12-14, *infra*.

29.     For example, one consumer complained, "I put the premier white morsels in my Wilton chocolate pro candy melting pot and it never melted. It was just a lumpy, clumpy blob." *See* Figure 12, *infra*.

30.     Another consumer complained, "I had such a hard time melting and never got it melted down where I was able to use. I ended up just throwing the whole product away, and never finished my cake balls. After reading the reviews, I know it was [the] product and not me lol." *See* Figure 12, *infra*.

31.     Another consumer wrote, "What a disaster! I wish I'd gone to this site before attempting to melt these things! I tried to melt them in the microwave, a double boiler and even he [sic] oven. All I got was a glob." *See* Figure 13, *infra*.

32.     Yet another consumer complained, "tried to melt white chocolate on double broiler after quiet [sic] a while gave up!" *See* Figure 14, *infra*.

///

///

///

///

16

**Figures 12-14** (below): Screenshots taken from Nestle's official website revealing that consumers are misled by Nestle's labeling and advertising of the Product as containing white chocolate and are therefore surprised when the Product does not melt as expected from real white chocolate.

*Figure 12.*



*Figure 13.*



CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

1

### Figure 14.



33.    Nestle is aware that reasonable consumers are misled by its Product labeling and advertising. Nestle manufactures and sells another "white morsel" product. A true and correct representation of the front of the Nestle "Simply Delicious White Morsels" product is shown in the image below.



34.    Unlike the Product at issue, Nestle's "Simply Delicious White Morsels" product contains real white chocolate.

35.    Nestle intentionally calls the Product at issue "Premier White Morsels" to deceive reasonable consumers into believing they are buying a product that contains real white chocolate.

36.    Nestle also manufactures and sells a product in Europe called "Kit Kat *White*," which also contains real white chocolate. A true and correct representation of the front of the Nestle "Kit Kat *White*" product is shown in the image below.



37.    Unlike the Product at issue, the "Kit Kat *White*" product contains white chocolate.

38.    Nestle calls the product "Kit Kat *White*" because it knows that consumers interpret the term "White" to mean that the product contains real white chocolate.

39.    Nestle's labeling is materially different from Cascadian Farm "Chewy Vanilla Chip Granola Bars" because it does not attempt to mislead consumers to think it includes white chocolate by calling "Vanilla Chip" instead of "White Chip" granola bars. A true and correct representation of the front of the Cascadian Farms "Chewy Vanilla Chip Granola Bars" product is shown in the image below.

///

///

///

///

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

1
2
3
4
5
6
7
8
9
10

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



40.    The vanilla chips in the Cascadian Farm "Chewy Vanilla Chip Granola Bars" contain many of the same ingredients as the Product (sugar, palm kernel oil, sunflower lecithin).

41.    Cascadian Farm calls its product "Vanilla Chip" and it does not contain any white chocolate.

42.    The Product is labeled and advertised as "Premier White" on its packaging and Nestle's official website, and is offered for sale side-by-side with Nestle's other real chocolate morsels. There is nothing premier about fake white chocolate. Taken as a whole, the Product's labeling and advertising misleads reasonable consumers into believing it contains white chocolate, not fake white chocolate.

43.    Plaintiffs seek injunctive relief and restitution against Defendant for false and misleading advertising in violation of Business and Professions Code Section 17200, *et seq.*, Business and Professions Code Section 17500, *et seq.*, and Civil Code Section 1750, *et seq.* Defendant made and continues to make these false and misleading statements in its labeling and advertising of the Product. Compliance with remedial statutes like those underlying this lawsuit will benefit Plaintiffs, the putative class, consumers, and the general public.

44.    The false and misleading labeling and advertising of the Product violates the California Consumers Legal Remedies Act, particularly California Civil Code Sections 1770(a)(5),

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

1770(a)(7), and 1770(a)(9).  As such, Defendant has committed *per se* violations of Business and Professions Code Section 17200, *et seq.*, and Business and Professions Code Section 17500.

45.     On June 5, 2019, the putative class provided Defendant with notice of these violations via certified U.S. mail pursuant to Civil Code Section 1750, *et seq.*

## JURISDICTION AND VENUE

46.     This Court has jurisdiction over all causes of action asserted herein pursuant to the California Constitution, Article VI, Section 10, because this case is a cause not given by statute to other trial courts. Plaintiffs have standing to bring this action pursuant to Business and Professions Code Section 17200, *et seq.*

47.     Venue is proper in this Court because Plaintiff Prescott purchased the Product in Santa Cruz County. Defendant receives substantial compensation from sales in Santa Cruz County, and Defendant made numerous misrepresentations which had a substantial effect in Santa Cruz County, including, but not limited to, label and internet advertisements.

48.     Defendant is subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between Defendant and California. Defendant is authorized to do and doing business in California.

49.     This case was originally filed in Santa Cruz County pursuant to California Constitution, Article VI, Section 10 but was subsequently removed by Defendant on November 13, 2019 pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.

## PARTIES

50.     Plaintiff Prescott is an individual residing in Santa Cruz, California. Prescott purchased the Product in California within the last four (4) years of the filing of this Complaint. Specifically, Prescott purchased the Product in or around December 2018 at a Target store located at 1825 41st Ave in Capitola, California. Prescott wanted to purchase white chocolate chips. In making his purchase decision, Prescott reasonably relied upon the labeling, advertising, and placement of the Product. Prescott believed the Product contained real white chocolate because the name of the Product included the term "White." Prescott's belief that the Product contained real

FIRST AMENDED CLASS ACTION COMPLAINT

white chocolate was reasonable because "white" chocolate is a recognized form of a specific chocolate that contains cacao butter/fat. Prescott reasonably believed the Product was white chocolate because it was displayed side-by-side next to other chocolate morsel products. Nestle did nothing to dispel Prescott's reasonable expectation that the Product contained real white chocolate. The Product contained no disclaimer, prominent or otherwise, stating the Product contained no chocolate.

51.     Plaintiff Cheslow is an individual residing in Santa Cruz, California. Cheslow purchased the Product in California within the last four (4) years of the filing of this Complaint. Specifically, Cheslow purchased the Product in or around late 2018 at a Target store located at 950 Coddingtown Center in Santa Rosa, California. Cheslow wanted to purchase white chocolate chips. In making her purchase decision, Cheslow reasonably relied upon the labeling, advertising, and placement of the Product. Cheslow believed the Product contained real white chocolate because the name of the Product included the term "White." Prescott's belief that the Product contained real white chocolate was reasonable because "white" chocolate is a recognized form of a specific chocolate that contains cacao butter/fat. Cheslow reasonably believed the Product was white chocolate because it was displayed side-by-side next to other chocolate morsel products. Nestle did nothing to dispel Cheslow's reasonable expectation that the Product contained real white chocolate. The Product contained no disclaimer, prominent or otherwise, stating the Product contained no chocolate.

52.     The label and advertising statements were prepared and approved by Defendant and its agents and disseminated through its packaging, label, and national advertising media, containing the misrepresentations alleged herein and designed to encourage consumers to purchase the Product. In reasonable and detrimental reliance upon these misrepresentations, Plaintiffs purchased the Product believing it was white chocolate. Had Plaintiffs known the Product was not white chocolate, they would not have purchased the Product. Plaintiffs would purchase the Product again in the future if they could be sure that the Product was white chocolate.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

53.     Nestle USA, Inc. is a corporation headquartered in Virginia. Nestle maintains its principal place of business at 1812 N. Moore Street, Arlington, Virginia 22209. Nestle offers the Product for sale at stores and retailers as well as through the internet, throughout the nation, including the State of California. Nestle, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California. Nestle is one of the owners and distributors of the Product and is the company that created and/or authorized the false, misleading, and deceptive advertisements and packaging for the Product.

54.     The true names and capacities, whether individual, corporate, associate, or otherwise of certain manufacturers, distributors, and/or their alter egos sued herein as DOES 1 through 10 inclusive are presently unknown to Plaintiffs who therefore sue these Defendants by fictitious names.  Plaintiffs will seek leave of this Court to amend the Complaint to show their true names and capacities when the same have been ascertained. Plaintiffs are informed and believe and based thereon allege that DOES 1 through 10 were authorized to do and did business in Santa Cruz County. Plaintiffs are further informed and believe and based thereon allege that DOES 1 through 10 were and/or are, in some manner or way, responsible for and liable to Plaintiffs for the unfair business practices set forth herein.

55.     Plaintiffs are informed and believe and based thereon allege that at all times relevant herein each of the Defendants was the agent, servant, employee, subsidiary, affiliate, partner, assignee, successor-in-interest, alter ego, or other representative of each of the remaining Defendants and was acting in such capacity in doing the things herein complained of and alleged.

56.     In committing the wrongful acts alleged herein, Defendants planned and participated in and furthered a common scheme by means of false, misleading, deceptive, and fraudulent representations to induce members of the public to purchase the Product. Defendants participated in the making of such representations in that each did disseminate or cause to be disseminated said misrepresentations.

57.     Defendants, upon becoming involved with the manufacture, distribution, advertising, labeling, marketing, and sale of the Product, knew or should have known that the claims about the

FIRST AMENDED CLASS ACTION COMPLAINT

Product and, in particular, the claims suggesting and outright stating that the Product is white chocolate when it is not. Defendants affirmatively misrepresented the nature and characteristics of the Product in order to convince the public to purchase and consume the Product, resulting in, upon information and belief, profits of millions of dollars or more to Defendants, all to the detriment of the consuming public. Thus, in addition to the wrongful conduct herein alleged as giving rise to primary liability, Defendants further aided and abetted and knowingly assisted each other in breach of their respective duties and obligations as herein alleged.

## FACTS AND DEFENDANT'S COURSE OF CONDUCT

58.   Defendant's labeling, advertising, marketing, and packaging of the Product, identified above, falsely, misleadingly, and deceptively led Plaintiffs and other reasonable consumers into believing that the Product contained white chocolate when in fact it contains no chocolate, cocoa or cacao butter. Plaintiffs and other reasonable consumers are consistently misled into buying the Product without knowing that it has no white chocolate.

59.   Despite that Defendant knows that reasonable consumers desire to purchase white chocolate, Defendant takes no steps to disclaim the fact that the Product contains no white chocolate.

60.   Plaintiffs are not alleging non-compliance with the FDCA or the FDA's standard of identity for white chocolate; Plaintiffs are alleging that Defendant misrepresents the Product as white chocolate when it is not.

61.   The Product does not contain any white chocolate, cocoa butter, cocoa fat, or other cocoa derivative as required by the FDA. Instead, the Product contains: Sugar, Palm Kernel and Hydrogenated Palm Oil, Milk, Nonfat Dry Milk, Soy Lecithin, and Flavor. Despite the foregoing, the Product is advertised in a manner to mislead consumers into believing it contains real white chocolate.

62.   Plaintiffs and reasonable consumers reasonably believed the Product contains white chocolate based on the labeling, advertising, and marketing of the Product. Also, there other

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

versions of the Product within the same line of products, which contain real chocolate, that are displayed for sale directly adjacent to the Product.

63.     The Product is marketed and sold at retail stores throughout California and the United States.

64.     When purchasing the Product, Plaintiffs relied upon the label "White," as well as the overall labeling, advertising, and marketing of the Product as white chocolate, and was led to reasonably believe that the Product contains white chocolate. Had Plaintiffs known the Product did not contain white chocolate, then they would not have purchased it.

65.     Defendant's labeling and advertising claims leads consumers to reasonably believe that the Product contains white chocolate comprised of, at a minimum, cacao butter or fat, cocoa beans, powder or some cocoa derivative. Upon information and belief, thousands of reasonable consumers throughout California and the entire country have been similarly deceived by Defendant's conduct.

66.     Upon information and belief, during the course of its false, misleading, and deceptive labeling and advertising campaign, Defendant has sold millions of units or more of the Product based upon Defendant's false promises. Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations.

## CLASS ACTION ALLEGATIONS

67.     Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated.  The Class which Plaintiffs seek to represent comprises:

> "All persons who purchased the Product in the United States or, alternatively, in California, for personal consumption and not for resale during the time period of four years prior to the filing of the complaint through the present."

Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd, Ste. 804
Los Angeles, CA 90069

68.     The Class is comprised of millions of consumers throughout United States and/or State of California. The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

69.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented in that the Class was exposed to the same common and uniform false and misleading advertising and omissions. The questions of law and fact common to the Class predominate over questions which may affect individual Class members. Common questions of law and fact include, but are not limited to, the following:

    a.   Whether Defendant's conduct is an unlawful business act or practice within the meaning of Business and Professions Code section 17200, *et seq*.;

    b.   Whether Defendant's conduct is a fraudulent business act or practice within the meaning of Business and Professions Code section 17200, *et seq*.;

    c.   Whether Defendant's conduct is an unfair business act or practice within the meaning of Business and Professions Code section 17200, *et seq*.;

    d.   Whether Defendant's advertising is untrue or misleading within the meaning of Business and Professions Code section 17500, *et seq*.;

    e.   Whether Defendant made false and misleading representations in its advertising and labeling of the Product;

    f.   Whether Defendant knew or should have known that the representations were false; and,

    g.   Whether Defendant represented that the Product has characteristics, benefits, uses, or quantities which it does not have.

70.     Plaintiffs' claims are typical of the claims of the proposed Class, as the representations and omissions made by Defendant are uniform and consistent and are contained in advertisements and on packaging that was seen and relied on by Plaintiffs and members of the class.

1    71.    Plaintiffs will fairly and adequately represent and protect the interests of the proposed

2    Class. Plaintiffs have retained competent and experienced counsel in class action and other complex

3    litigation.

4    72.    Plaintiffs and the Class have suffered injury in fact and lost money as a result of

5    Defendant's false, deceptive, and misleading representations.

6    73.    Plaintiffs would not have purchased the Product but for the representations by

7    Defendant about the Product.

8    74.    The Class is identifiable and readily ascertainable. Notice can be provided to such

9    purchasers using techniques and a form of notice similar to those customarily used in class actions,

10   and by internet publication, radio, newspapers, and magazines.

11   75.    A class action is superior to other available methods for fair and efficient adjudication

12   of this controversy.  The expense and burden of individual litigation would make it impracticable

13   or impossible for proposed members of the Class to prosecute their claims individually.

14   76.    The litigation and resolution of the Class's claims are manageable. Plaintiffs have

15   already undertaken steps to resolve common factual and legal questions ultimately bearing on

16   classwide liability in an efficient manner, obviating the need for individualized evidence. For

17   instance, Plaintiffs have commissioned a marketing survey that will, when concluded, provide

18   evidence bearing on common questions of fact and liability. This (or any other) scientifically

19   conducted marketing survey will answer a number of specific issues which are probative of the

20   ultimate liability question, whether reasonable consumers are likely to be misled or deceived by

21   Defendant's labeling, advertising and marketing of the Product. For the reasons identified above,

22   and upon information and belief, reasonable consumers are likely to be misled or deceived by

23   Defendant's labeling, advertising and marketing of the Product.

24   77.    Defendant has acted on grounds generally applicable to the entire Class, thereby

25   making final injunctive relief and/or corresponding declaratory relief appropriate with respect to

26   the Class as a whole. The prosecution of separate actions by individual Class members would create

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

FIRST AMENDED CLASS ACTION COMPLAINT

the risk of inconsistent or varying adjudications with respect to individual member of the Class that would establish incompatible standards of conduct for Defendant.

78.     Absent a class action, Defendant will likely retain the benefits of its wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.  Absent a representative action, the Class members will continue to suffer losses and Defendant (and similarly situated companies) will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

**FIRST CAUSE OF ACTION:**

**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**

**BUSINESS & PROFESSIONS CODE § 17200, *et seq*.**

**(By Plaintiffs against all Defendants)**

79.     Plaintiffs herein repeat, reallege, and fully incorporate all allegations in all preceding paragraphs.

80.     This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq*., on behalf of Plaintiffs and a Class consisting of all persons residing in the United States and/or State of California who purchased the Product for personal use and not for resale during the time period of four years prior to the filing of the complaint through the present.

81.     Defendant in its advertising and packaging of the Product made false and misleading statements regarding the quality and characteristics of the Product, specifically, that the Product contained white chocolate when it did not. Such claims appear on the label and packaging of the Product which are sold at retail stores nationwide, point-of-purchase displays, as well as Nestle's official website, and other retailers' advertisements which have adopted Nestle's advertisements.

82.     Defendant's labeling and advertising of the Product led and continues to lead reasonable consumers, including Plaintiff, to believe that the Product contains white chocolate.

83.     Defendant does not have any reasonable basis for the claims about the Product made in Defendant's advertising and on Defendant's packaging or label because the Product does not

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

contain white chocolate.  Defendant knew and knows that the Product did not/does not contain white chocolate, though Defendant intentionally advertised and marketed the Product to deceive reasonable consumers into believing that Product contained white chocolate.

84.     The misrepresentations by Defendant alleged above constitute unfair, unlawful, and fraudulent business practices within the meaning of California Business and Professions Code Section 17200.

85.     In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

86.     Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

87.     All of the conduct alleged herein occurs and continues to occur in Defendant's business.  Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or it is otherwise ordered to do so.

88.     Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiffs and the members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling and advertising the sale and use of the Product.  Likewise, Plaintiffs and the members of the Class seek an order requiring Defendant to disclose such misrepresentations, and to preclude Defendant's failure to disclose the existence and significance of said misrepresentations.

89.     Plaintiffs and the Class have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendant's false representations.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

90.     Plaintiffs would not have purchased the Product but for the representations by Defendant about the Product as containing white chocolate.

## SECOND CAUSE OF ACTION:

## FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS & PROFESSIONS CODE § 17500, *et seq.*

### (By Plaintiffs against all Defendants)

91.     Plaintiffs herein repeat, reallege and fully incorporate all preceding allegations and paragraphs.

92.     This cause of action is brought pursuant to Business and Professions Code Section 17500, *et seq.*, on behalf of Plaintiffs and the Class consisting of all persons residing in the United States and/or State of California who purchased the Product for personal consumption and not for resale during the time period of four years prior to the filing of the complaint through the present.

93.     Defendant in its advertising and packaging of the Product made and continues to make false and misleading statements regarding the quality and characteristics of the Product, and in particular, that it contains white chocolate when it does not.  Such claims appear on the label and packaging of the Product which are sold at retail stores and on Nestle's official website.

94.     Defendant's direct and implied claims about the Product lead reasonable consumers to believe that the Product contains, at a minimum, cacao fat or butter, cocoa beans, cocoa powder, or a cocoa derivative.

95.     Defendant knew or should have known that the Product does not contain white chocolate. Defendant's labeling, marketing, advertising and placement of the Product was designed to mislead consumers into believing the Product contained white chocolate.

96.     Plaintiffs relied on Defendant's misleading labeling, marketing, advertising and placement of the Product when he purchased the Product. Had he known the Product did not contain white chocolate, he would not have purchased it.

97.     Plaintiffs and the Class have suffered injury in fact and lost money as a result of and in reasonable and detrimental reliance upon Defendant's false representations.

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

98.     As alleged in the preceding paragraphs, the misrepresentations by Defendant of the material facts detailed above constitutes an unfair, unlawful, and fraudulent business practice within the meaning of California Business and Professions Code Section 17500.

99.     In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17500.

100.     Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiffs and the members of the Class seek a court order enjoining Defendant from continuing to deceptively advertise and label the Product as containing white chocolate.

### THIRD CAUSE OF ACTION:

### VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT,

### CALIFORNIA CIVIL CODE § 1750, *et seq.*

**(By Plaintiffs against all Defendants)**

101.     Plaintiffs herein repeat, reallege and fully incorporate all preceding allegations and paragraphs.

102.     This cause of action is brought pursuant to Civil Code Section 1750, *et seq.*, the Consumers Legal Remedies Act ("CLRA"), on behalf of Plaintiffs and a Class consisting of all persons residing in the United States and/or State of California who purchased the Product for personal consumption and not for resale during the time period of four years prior to the filing of the complaint through the present.

103.     The Class consists of millions of persons, the joinder of whom is impracticable.

104.     There are questions of law and fact common to the class, which questions are substantially similar and predominate over questions affecting the individual members, as set forth above.

31

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

105. The "white chocolate" misrepresentations described herein were intended to increase sales to the consuming public, and violated and continue to violate Section 1770(a)(5) of the CLRA by representing that the Product has characteristics and benefits which it does not have.

106. Defendant fraudulently deceived Plaintiffs and the Class by representing that the Product has certain characteristics, benefits, and qualities which it does not have. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiffs and the Class, specifically by claiming and advertising that the Product contains white chocolate when in fact it contains a cheaper, unhealthier blend of sugars and hydrogenated oils. Said misrepresentations and concealment were done with the intention of deceiving Plaintiffs and the Class, and depriving them of their legal rights and money.

107. Defendant's claims about the Product led and continues to lead consumers like Plaintiffs to reasonably believe that the Product contains white chocolate.

108. Defendant knew or should have known that the Product does not contain white chocolate.

109. Plaintiffs and the Class have suffered injury in fact as a result of and in reliance upon Defendant's false representations.

110. Plaintiffs would not have purchased the Product but for the misrepresentations by Defendant about the Product containing white chocolate.

111. Pursuant to Section 1780(a) of the CLRA, Plaintiffs seeks injunctive relief in the form of an order enjoining Defendant from continuing to make the misleading and deceptive representations that the Product is white chocolate. At a minimum, Defendant must immediately cease its false, deceptive, and misleading "white chocolate" representations on its point-of-purchase displays and official website. Those claims, in conjunction with its "white" label, intended use (baking), and sale location directly adjacent to other chocolate chip baking morsels, are false, deceptive, and misleading.

112. Plaintiffs and the Class members shall suffer irreparable harm if such an order is not granted.

FIRST AMENDED CLASS ACTION COMPLAINT

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment and relief on all Causes of Action as follows:

      A.  An order enjoining Defendant from labeling and advertising the Product as white chocolate;

      B.  Reasonable attorneys' fees;

      C.  Costs of this suit; and

      D.  Such other and further relief as the Court may deem necessary or appropriate.

## **JURY TRIAL DEMANDED**

Plaintiffs demand a jury trial on all triable issues.

DATED: January 22, 2020          **CLARKSON LAW FIRM, P.C.**

                    /s/ Ryan J. Clarkson
                    Ryan J. Clarkson, Esq.
                    Matthew T. Theriault, Esq.
                    Bahar Sodaify, Esq.

                    *Attorneys for Plaintiffs*

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

FIRST AMENDED CLASS ACTION COMPLAINT