UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEVEN PRESCOTT and LINDA CHESLOW, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NESTLE USA, INC,<br><br>Defendant. | Case No. 19-cv-07471-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>[Re: ECF 27] |

Plaintiffs Steven Prescott and Linda Cheslow bring this putative class action against Defendant Nestle USA, Inc., seeking to assert state law consumer claims on behalf of persons who purchased "Nestle Toll House's Premier White Morsels" (the "Product"). Plaintiffs claim that Nestle's labeling and advertising misleads consumers into believing that the Product contains white chocolate when in fact it does not.

Nestle moves to dismiss the operative first amended complaint ("FAC") for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the briefing of the parties and the oral argument of counsel presented at the hearing on May 7, 2020.

For the reasons discussed below, the motion is GRANTED WITH LEAVE TO AMEND.

**I.   BACKGROUND**

Plaintiffs filed this action in the Santa Cruz County Superior Court on September 19, 2019. *See* Notice of Removal Exh. 1, ECF 1-1. Nestle removed the action to federal district court pursuant to the Class Action Fairness Act, 18 U.S.C. § 1332(d). *See* Notice of Removal, ECF 1. Nestle moved to dismiss the complaint under Rule 12(b)(6), and Plaintiffs responded by filing the operative FAC. *See* Motion to Dismiss, ECF 10; FAC, ECF 13. After the FAC was filed, the

Court terminated the motion to dismiss the original complaint. *See* Order, ECF 22.

Plaintiffs devote many paragraphs of the FAC to the history of chocolate production from 1400 B.C. to the present; the introduction of white chocolate by Nestle in the 1930s; and regulations issued by the Food and Drug Administration ("FDA") defining white chocolate. *See* FAC ¶¶ 5-16. Plaintiffs do not allege that they were aware of any of these facts at the time they purchased the Product, other than to allege generally that they "understand that 'white chocolate' contains chocolate derived from cocoa or cacao." FAC ¶ 14.

Plaintiffs claim that they purchased the Product in the belief that it was white chocolate, and that in making their purchases they "reasonably relied upon the labeling, advertising, and placement of the Product." FAC ¶¶ 50-51. Specifically, Plaintiffs allege they "believed the Product contained real white chocolate because the name of the Product included the term 'White.'" FAC ¶¶ 50-51. Plaintiffs also allege that the word "premier" misleads "consumers into thinking that the Product contains premier ingredients, not fake white chocolate." FAC ¶ 19. In addition, Plaintiffs claim that they "reasonably believed the Product was white chocolate because it was displayed side-by-side next to other chocolate morsel products." FAC ¶¶ 50-51. "Had Plaintiffs known the Product did not contain white chocolate, then they would not have purchased it." FAC ¶ 64.

Plaintiffs seek to represent a nationwide class or, alternatively, a California class of persons who purchased the Product. FAC ¶ 67. The FAC contains three state law claims: (1) unfair competition under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; false advertising under California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; and violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.* Plaintiffs seek an injunction prohibiting Nestle from labeling or advertising its Product as white chocolate[1]; reasonable attorneys' fees; costs of suit; and such other relief as the Court may deem appropriate. FAC Prayer, ECF 13.

---

[1] The Court notes that Plaintiffs do not allege that Nestle currently labels its Product as "white chocolate," and thus it does not appear on the face of the FAC that such injunctive relief would be a reasonable remedy. However, Nestle does not raise that issue in this motion.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

When evaluating a Rule 12(b)(6) motion, the district court must consider the allegations of the complaint, documents incorporated into the complaint by reference, and matters which are subject to judicial notice. *Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

## III. DISCUSSION

Nestle seeks dismissal of all claims in the FAC on the grounds that: (1) Plaintiffs have not plausibly alleged that the Product's labeling is false or misleading; (2) Plaintiffs lack statutory standing under the UCL, FAL, and CLRA because they have not plausibly alleged reliance; (3) the FAC does not meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b); (4) Plaintiffs' claim that the Product is falsely labeled as "Premier" fails because the word "Premier" is non-actionable puffery; and (5) Plaintiffs lack standing to pursue injunctive relief. In opposition, Plaintiffs contend that they plausibly have alleged the false and misleading nature of Nestle's labeling and advertising of the Product, they have statutory standing to pursue their claims, they have satisfied the heightened pleading requirements of Rule 9(b), and they have standing to seek injunctive relief.

Before addressing these arguments, the Court takes up Nestle's request for judicial notice as well as its contention that these Plaintiffs have brought similar cases against other companies. The Court then addresses Nestle's asserted grounds for dismissal.

**A.     Nestle's Request for Judicial Notice**

Nestle requests that the Court take judicial notice of high-resolution images of the front of the Product package and the ingredient list on the back of the Product package. *See* Giali Decl. Exh. A, ECF 27-2. Nestle asserts that these images show the Product package more clearly and more completely than the image included in the FAC at paragraph 18. *See* FAC ¶ 18, ECF 13. While Plaintiffs state in their opposition brief's table of contents that the request for judicial notice should be denied, they do not address the request for judicial notice in the body of their brief. *See* Opp. at i, 22-23, ECF 29.

Under Federal Rule of Evidence 201, a "court may judicially notice a fact that is not subject to reasonable dispute." Fed. R. Evid. 201. Other Courts in this district have taken judicial notice of images that better display the packaging in question, on the ground that "the packaging of defendant's product is publicly available and not subject to reasonable dispute." *Cheslow v. Ghirardelli Chocolate Co.*, No. 19-CV-07467-PJH, 2020 WL 1701840, at *3 (N.D. Cal. Apr. 8, 2020). That reasoning applies here. Nestle's request for judicial notice is GRANTED.[2]

**B.     Plaintiffs' Participation in Similar Lawsuits**

Nestle points out that Plaintiffs have participated in similar, earlier-filed lawsuits. Both Cheslow and Prescott are named plaintiffs in another action pending in this district before Chief Judge Phyllis J. Hamilton, in which they assert putative class claims under California's UCL, FAL, and CLRA based on allegations that Ghirardelli misleads consumers into believing that its "Premium Baking Chips Classic White Chips" product contains white chocolate when it does not. *See Cheslow v. Ghirardelli Chocolate Co.*, No. 19-cv-07467 (N.D. Cal.). Cheslow also submitted a claim in an earlier class action suit against Ghirardelli based on its alleged deceptive labeling of white baking chips. *See Miller v. Girardelli Chocolate Co.*, 12-cv-04936-LB (N.D. Cal.). Prescott previously sued the Kroger Company, alleging that its ChipMates white-chip cookie product is falsely advertised to contain white chocolate. *See Prescott v. The Kroger Co.*, No.

---

[2] Having granted Nestle's request for judicial notice, the Court need not address Nestle's alternative argument that the images may be considered under the incorporation by reference doctrine.

4

1    19CV004055 (Monterey County Superior Court).

2    　　　While Plaintiffs' suitability as class representatives may be impacted by their participation
3    in earlier lawsuits alleging false labeling of white chip products, that is an issue for another day.
4    Nestle does not assert that the prior lawsuits give rise to a defense suitable for determination at the
5    motion to dismiss stage.  Accordingly, Plaintiffs' participation in the earlier-filed lawsuits is
6    irrelevant to the present motion, except insofar as rulings in those lawsuits constitute persuasive
7    authority.  The complaint in *Cheslow* alleged facts similar to those alleged in the FAC here, and
8    Judge Hamilton dismissed the *Cheslow* complaint with leave to amend based on the identical
9    grounds argued by Nestle here.  *See Cheslow v. Ghirardelli Chocolate Co.*, No. 19-CV-07467-
10   PJH, 2020 WL 1701840, at *9 (N.D. Cal. Apr. 8, 2020).  As discussed below, this Court finds the
11   *Cheslow* decision to be highly persuasive.

12   　　　**C.　　　Allegations that Product's Labeling and Advertising is False or Misleading**

13   　　　Plaintiffs' claims under the UCL (Claim 1), FAL (Claim 2), and CLRA (Claim 3) are
14   grounded in Plaintiffs' assertion that Nestle's labeling, advertising, and placement of the Product
15   in grocery stores deceived them into believing that the Product contains white chocolate.  *See* FAC
16   ¶¶ 50-51, 81-85, 93-96, 106-07.  Plaintiffs' "claims under these California statutes are governed
17   by the 'reasonable consumer' test."  *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir.
18   2008) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)).  "Under the reasonable
19   consumer standard, [Plaintiffs] must show that members of the public are likely to be deceived."
20   *Id.*  Moreover, the "false advertising violations must be premised on some statement or
21   representation by the defendant about the product."  *Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d
22   1163, 1169 (C.D. Cal. 2014), *aff'd*, 649 F. App'x 424 (9th Cir. 2016).  A plaintiff's mistaken
23   belief about the product, untethered to a statement or representation by the defendant, is
24   insufficient to state a claim under the UCL, FAL, or CLRA.  *See id.*

25   　　　Application of the reasonable consumer standard involves "questions of fact that are
26   appropriate for resolution on a motion to dismiss only in rare situations."  *Reid v. Johnson &*
27   *Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (quotation marks, citation, and alteration omitted); *see*
28   *also Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014) ("Whether a

United States District Court
Northern District of California

reasonable consumer would be deceived by a product label is generally a question of fact not amenable to determination on a motion to dismiss."). "However, in rare situations a court may determine, as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not plausible." *Ham*, 70 F. Supp. 3d at 1193.

Applying these standards, this Court concludes that Plaintiffs have not alleged facts showing that Nestle's labeling, advertising, and product placement would deceive a reasonable consumer into believing that the Product contains white chocolate. Plaintiffs allege that the words "white" and "premier" and are misleading, as they imply that the product contains white chocolate, and that the placement of the Product next to chocolate baking chips in grocery stores is misleading. *See* FAC ¶¶ 50-51, 81-85, 93-96, 106-07. But the Product's label does not state that it contains white chocolate or even use the word "chocolate." As discussed below, Plaintiffs' allegations are insufficient to state a claim.

### 1. The Word "White" on the Product Label

Plaintiffs allege that the word "white" on the label of Nestle's "Toll House's Premier White Morsels" suggests that the product contains white chocolate. Nestle asserts that the use of the adjective "white" does not suggest that its Product contains white chocolate.

In *Cheslow*, Judge Hamilton dismissed nearly identical claims based on use of the word "white" on the packaging of Ghirardelli's "Premium Baking Chips Classic White Chips." *See Cheslow*, 2020 WL 1701840, at *5. Judge Hamilton relied on *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019), for guidance in evaluating claims of deception based on use of modifying adjectives on food labels. In *Becerra*, the Ninth Circuit addressed claims that the word "diet" on the product "Diet Dr. Pepper" meant that drinking Diet Dr. Pepper assisted in weight loss or healthy weight management. *Becerra*, 945 F.3d at 1227. After considering the commonly understood definition of the word "diet" when used as an adjective – "reduced in or free from calories" – the Ninth Circuit concluded that "no reasonable consumer would assume that Diet Dr Pepper's use of the term 'diet' promises weight loss or management." *Id.* at 1229. The Court went on to state that, "In context, the use of 'diet' in a soft drink's brand name is understood as a relative claim about the calorie content of that soft drink compared to the same brand's

6

'regular' (full-caloric) option." *Id.* Applying this reasoning to the facts alleged in *Cheslow*, Judge Hamilton concluded that no reasonable consumer would assume that use of the word "white" on the package of Ghirardelli's "Premium Baking Chips Classic White Chips" means that the product contains white chocolate. *Cheslow*, 2020 WL 1701840, at *5. Judge Hamilton observed that "[s]imply because some consumers unreasonably assumed that 'white' in the term 'white chips' meant white chocolate chips does not make it so." *Id.*

This Court agrees with the reasoning of *Cheslow* and, in particular, its application of *Becerra* to claims based on use of the word "white" on the packaging of baking chips. No reasonable consumer could believe that a package of baking chips contains white chocolate simply because the product includes the word "white" in its name or label. Plaintiffs' argument to the contrary based on their allegations regarding other consumers' posts to the "Top Class Actions" website is unpersuasive. *See* FAC ¶¶ 22-32. Those consumers' subjective opinions that Nestle's labeling is misleading, posted in the context of asking to join this lawsuit, are irrelevant to this Court's application of the reasonable consumer standard as discussed in *Becerra* and *Cheslow*.

### 2. The Word "Premier" on the Product Label

Plaintiffs allege that the word "premier" misleads "consumers into thinking that the Product contains premier ingredients, not fake white chocolate." FAC ¶ 19. Plaintiffs assert in the FAC that "premier" is defined as "first in position, rank, or importance," and that "[r]easonable consumers do not expect that the Product contains fake white chocolate, or inferior ingredients such as hydrogenated oils." FAC ¶ 19. Nestle argues that use of the term "premier" is non-actionable puffery.

The Court agrees with Nestle. Fraud-based claims cannot be based on statements that are "generalized, vague and unspecific assertions, constituting mere 'puffery' upon which a reasonable consumer could not rely." *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003), *opinion amended on denial of reh'g*, 352 F.3d 367 (9th Cir. 2003). Applying this rule, Judge Hamilton concluded in *Cheslow* that Ghirardelli's use of "premium" in the context of "Premium Baking Chips" and "premium ingredients" constitutes puffery upon which no reasonable consumer could rely to conclude that the product contains white chocolate.

*See Cheslow*, 2020 WL 1701840, at *6. Similarly, in the present case this Court concludes that Nestle's use of the word "premier" on the label of its "Toll House's Premier White Morsels" is mere puffery that cannot form the basis of a claim under the reasonable consumer standard applicable to the UCL, FAL, and CLRA.

### 3. Product Placement

Plaintiffs' claims are based in part on the Product's placement near baking chips containing chocolate in the grocery store. *See* FAC ¶¶ 50-51, 81, 95. Nestle correctly asserts that a third-party retailer's placement of a product cannot support a claim against the manufacturer. *See Parent v. Millercoors LLC*, No. 3:15-CV-1204-GPC-WVG, 2016 WL 3348818, at *7 (S.D. Cal. June 16, 2016) (defendant beer manufacture could not be held liable based on retailer's decision to stock Blue Moon beer among craft beers). Plaintiffs have not alleged that Nestle controls the placement of its Product in retail grocery stores.

### 4. Conclusion

Based on the foregoing, the Court concludes that Plaintiffs have failed to allege facts sufficient to make out a plausible claim against Nestle under the UCL, FAL, or CLRA. The motion to dismiss therefore is GRANTED as to Claims 1 (UCL), 2 (FAL), and 3 (CLRA).[3]

### D. Statutory Standing under UCL, FAL, and CLRA

Nestle argues that Plaintiffs have failed to allege facts establishing statutory standing under the UCL, FAL, and CLRA because they have not plausibly alleged that they suffered economic injury caused by Nestle's false advertising. To assert a claim under the UCL or FAL, the plaintiff must allege economic injury. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013). To assert a claim under the CLRA, a plaintiff must plead "any damage." *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018). An allegation that the consumer would not have bought the product but for the alleged misrepresentation is sufficient to allege the requisite injury under the UCL, FAL, or CLRA. *See id.* The FAC alleges that "[h]ad Plaintiffs

---

[3] Having concluded that Plaintiffs have failed to state a claim for relief under the standards discuss above, the Court need not and does not separately address Nestle's argument that Plaintiffs have failed to satisfy the heightened pleading requirements of Rule 9(b).

8

known the Product did not contain white chocolate, then they would not have purchased it," FAC ¶ 64, and that "Plaintiffs would not have purchased the Product but for the representations by Defendant about the Product," FAC ¶ 73. Those allegations are sufficient to establish statutory standing.

Nestle's arguments grounded in Plaintiffs' knowledge, or lack of knowledge, regarding the FDA's definition of white chocolate do not alter this analysis. Moreover, Nestle's argument that Plaintiffs improperly seek a full refund of the price paid for the product goes to the amount of damages they would be entitled to recover in the event they prevail, not the viability of their claims.

Accordingly, the motion to dismiss is DENIED to the extent it is based on lack of statutory standing.

### E.  Standing to Seek Injunctive Relief

Finally, Nestle argues that Plaintiffs have failed to allege facts demonstrating that they have standing to seek injunctive relief. "A plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). "To establish standing to seek injunctive relief or declaratory relief, a plaintiff must show he is under threat of suffering 'injury in fact that is concrete and particularized and that the threat must be actual and imminent, not conjectural or hypothetical.'" *N.Y. v. San Ramon Valley Unified Sch. Dist.*, No. 17-CV-03906-MMC, 2018 WL 2463243, at *2 (N.D. Cal. June 1, 2018) (quotation marks, citation, and alterations omitted).

Under certain circumstances, a previously deceived consumer who brings a false advertising claim can allege that her inability to rely on the defendant's future advertising constitutes an injury sufficient to grant Article III standing to seek prospective relief. *Davidson*, 889 F.3d at 967. In *Davidson*, the Court found that the plaintiff, who had brought suit based on the defendant's allegedly false representations that its bathroom wipes were "flushable," had standing to seek injunctive relief where she alleged that she: continued to desire to purchase wipes suitable for disposal in a household toilet; would purchase truly flushable wipes manufactured by the defendant if it were possible; regularly visited stores where the defendant's flushable wipes

were sold; and continually saw the defendant's flushable wipes packaging but had no way of determining the truth of the representation that the wipes were "flushable." *Id.* at 970-71.

In the present case, Plaintiffs have not alleged that they would purchase the Product absent the alleged misleading labeling. To the contrary, Plaintiffs make clear that they do not wish to purchase "fake" white chocolate. *See* FAC ¶¶ 42 ("There is nothing premier about fake white chocolate."); 64 ("Had Plaintiffs known the Product did not contain white chocolate, then they would not have purchased it."). Now that Plaintiffs know the Product does not contain white chocolate, it is difficult to see how Plaintiffs could be misled into purchasing it in the future. *See Joslin v. Clif Bar & Co.*, No. 4:18-CV-04941-JSW, 2019 WL 5690632, at *4 (N.D. Cal. Aug. 26, 2019) ("If Plaintiffs do not want products that do not contain real white chocolate, the Court is hard pressed to see how Plaintiffs would be able to allege the requisite future harm.").

Plaintiffs allege that they "would purchase the Product again in the future if they could be sure that the Product was white chocolate." FAC ¶ 52. However, the Court lacks authority to compel Nestle to make any particular product by way of an injunction.

The motion to dismiss is GRANTED on the additional basis that Plaintiffs have failed to allege facts demonstrating standing to seek injunctive relief.

### E.  Leave to Amend

Nestle asks that its motion to dismiss be granted without leave to amend. However, this order represents the first guidance offered by the Court regarding Plaintiffs' claims. Accordingly, the Court finds that leave to amend is appropriate.

## IV.  ORDER

(1) Nestle's motion to dismiss the FAC is GRANTED WITH LEAVE TO AMEND as to all claims;

(2) Any amended pleading shall be filed within forty-five days of this order, or by July 20, 2020;

(3) This order terminates ECF 27.

Dated:  June 4, 2020

/s/ Beth Labson Freeman

BETH LABSON FREEMAN
United States District Judge

10