UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEVEN PRESCOTT and LINDA CHESLOW, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NESTLÉ USA, INC.,<br><br>Defendant. | Case No. 19-cv-07471-BLF<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT WITHOUT LEAVE TO AMEND; AND DISMISSING ACTION WITH PREJUDICE**<br><br>[Re: ECF 55] |

In this putative class action, Plaintiffs Steven Prescott and Linda Cheslow allege that Nestlé's labeling and advertising of its "Nestlé Toll House Premier White Morsels" (the "Product") misleads consumers to believe that the Product contains white chocolate when it does not. Nestlé moves to dismiss the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the reasons discussed below, the motion is GRANTED WITHOUT LEAVE TO AMEND and the action is DISMISSED WITH PREJUDICE.

**I.   BACKGROUND**

This action was removed from the Santa Cruz County Superior Court under the Class Action Fairness Act, 28 U.S.C.A. § 1332(d). *See* Not. of Removal, ECF 1. Plaintiffs thereafter filed a first amended complaint ("FAC") as of right. *See* FAC, ECF 13. The Court granted Nestlé's motion to dismiss the FAC with leave to amend ("Prior Dismissal Order"), based on Plaintiffs' failure to state a claim under California's Unfair Competition Law ("UCL"), Cal. Bus.

& Prof. Code § 17200 *et seq.*, False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, or Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq*. *See* Prior Dismissal Order, ECF 49. Plaintiffs also failed to allege facts establishing standing to seek injunctive relief. *See id*. Plaintiffs timely filed the operative second amended complaint ("SAC"), reasserting their claims under California's UCL, FAL, and CLRA. *See* SAC, ECF 54.

The Court summarizes the SAC's relevant factual allegations, which are accepted as true for purposes of evaluating the motion to dismiss. Excluded from this factual summary are paragraphs of the SAC devoted to the process of creating chocolate, the history of chocolate production from 1400 B.C. to the present, the introduction of white chocolate by Nestlé in the 1930s, and Nestlé's annual earnings. *See* SAC ¶¶ 11-23, ECF 54. Those paragraphs do not bear on the Court's determination whether Plaintiffs have stated a claim for relief.

Plaintiffs allege that they purchased the Product in the belief that it contained white chocolate. SAC ¶ 5. The SAC depicts the front of the Product package, which is a yellow bag bearing the following words and images: "Nestlé" above a "TOLL HOUSE" logo; the words "PREMIER WHITE" above the word "MORSELS"; a dark-colored cookie containing white morsels; and a scattering of white chip-shaped morsels. *Id*. ¶ 1. Plaintiffs allege that this package caused them to reasonably believe that the Product contains white chocolate because:

> (1) the Product is labeled as "White," which, as described below, has been historically used to describe a distinct and real type of chocolate, and the understanding of both named-Plaintiffs is that the term "White" describes a distinct and real type of chocolate; (2) the Product label has pictures of what Nestlé intended to be white chocolate chips, and both named-Plaintiffs viewed these pictures and reasonably believed that they depicted white chocolate chips when they purchased the Product; (3) the Product label has pictures of what Nestlé intended to be white chocolate chip cookies, and both named-Plaintiffs viewed and relied on the depictions of white chocolate chip cookies when they purchased the Product; and (4) the Product was placed among other chocolate products, which further led the named-Plaintiffs to believe that they were purchasing white chocolate. Upon information and belief, Nestlé maintains control over the placement of the Products within retail stores, including the stores where the named-Plaintiffs purchased the Products.

*Id*. ¶ 5. Elsewhere in the SAC, Plaintiffs allege that Nestlé labels its Product "'*Premier* White,' misleading consumers into thinking that the Product contains premier ingredients, not fake white chocolate." *Id*. ¶ 25.

2

1    Plaintiffs allege that a "widespread consumer study" shows among other things that
2    approximately 95% of respondents believed the Product contains white chocolate. SAC ¶ 10 &
3    Exh. A. Plaintiffs also reproduce numerous consumer complaints that were sent to Plaintiffs'
4    counsel and/or posted on Nestlé's website. SAC ¶¶ 28-38. Two common themes in the alleged
5    consumer complaints are that the consumers thought the Product contains white chocolate and the
6    Product does not melt like chocolate during baking. *Id*.

7    Plaintiffs seek to represent a nationwide class or, alternatively, a California class of
8    persons who purchased the Product for personal consumption. SAC ¶ 77. As in the prior FAC,
9    Plaintiffs assert violations of California's UCL, FAL, and CLRA based on Nestlé's allegedly
10   deceptive labeling and advertising. Plaintiffs seek injunctive relief and restitution. SAC ¶ 51.

**II.    LEGAL STANDARD**

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

**III.   DISCUSSION**

Nestlé argues that the SAC should be dismissed without leave to amend because Plaintiffs again fail to state a claim under the UCL, FAL, or CLRA, and again fail to allege facts establishing their standing to seek injunctive relief. In opposition, Plaintiffs contend that under the applicable reasonable consumer test, the SAC raises factual issues not appropriate for resolution on a motion to dismiss. Plaintiffs also contend that they allege facts establishing standing to seek injunctive relief.

The Court first addresses whether Plaintiffs state a claim under the applicable reasonable consumer test, and then it addresses Plaintiffs' standing to seek injunctive relief.

3

### A. Plaintiffs Fail to State a Claim under the Reasonable Consumer Test

As a federal court sitting in diversity over Plaintiffs' California state law claims, this Court applies the substantive law of California. *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020). "California's UCL prohibits any 'unlawful, unfair or fraudulent business act or practice.'" *Id*. (quoting Cal. Bus. & Prof. Code § 17200). "California's FAL prohibits any unfair, deceptive, untrue or misleading advertising." *Id*. (internal quotation marks and citation omitted). A violation of the FAL necessarily constitutes a violation of the UCL. *See id.* Finally, "California's CLRA prohibits 'unfair methods of competition and unfair or deceptive acts or practices.'" *Id*. (quoting Cal. Civ. Code § 1770).

"Whether a business practice is deceptive or misleading under these California statutes [is] governed by the reasonable consumer test." *Moore*, 966 F.3d at 1017 (internal quotation marks and citations omitted). Under this standard, Plaintiffs "must show that members of the public are likely to be deceived." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation marks and citation omitted). The reasonable consumer test may be satisfied by advertising that is false or, alternatively, advertising that is true but nonetheless misleading. *See id.* However, "a plaintiff's unreasonable assumptions about a product's label will not suffice." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021). Thus, while application of the reasonable consumer test typically involves question of fact that may not be resolved on a motion to dismiss, dismissal is appropriate where the court determines that the plaintiff's claims are not plausible. *See id.* at 886. ("In sum, the district court properly dismissed this action under Federal Rule of Civil Procedure 12(b)(6) because Trader Joe's representations on the front label and the ingredients statement of its Manuka Honey product are not misleading to a reasonable consumer as a matter of law."); *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1231 (9th Cir. 2019) ("Becerra has not sufficiently alleged that Diet Dr Pepper's labeling is false or misleading and dismissal was therefore proper.").

Plaintiffs allege that Nestlé violated the UCL, FAL, and CLRA through false and misleading labeling and advertising of the Product. Specifically, Nestlé allegedly "sells fake white

4

chocolate baking chips and tries to pass them off as white chocolate." SAC ¶ 1. The Court previously found that Plaintiffs' FAC did not satisfy the reasonable consumer test with respect to this theory. Plaintiffs asserted in the FAC that they were misled by the words "white" and "premier" on the Product package, in conjunction with the Product's placement next to chocolate baking chips in grocery stores. FAC ¶¶ 50-51, 81-85, 93-96, 106-07. This Court found those claims to be implausible, relying on the Ninth Circuit's decision in *Becerra* and Judge Phyllis J. Hamilton's application of *Becerra* in *Cheslow v. Ghirardelli Chocolate Co.*, No. 19-CV-07467-PJH, 2020 WL 1701840 (N.D. Cal. Apr. 8, 2020), another white chip labeling case brought by the same individuals who are Plaintiffs in the present case. *See* Prior Dismissal Order at 6-8.

In *Becerra*, the Ninth Circuit addressed claims that the word "diet" on the product "Diet Dr Pepper" meant that drinking Diet Dr Pepper assisted in weight loss or healthy weight management. *Becerra*, 945 F.3d at 1227. After considering the dictionary definition of the word "diet" when used as an adjective – "reduced in or free from calories" – the Ninth Circuit concluded that "no reasonable consumer would assume that Diet Dr Pepper's use of the term 'diet' promises weight loss or management." *Id.* at 1229. The Ninth Circuit went on to state that "[d]iet soft drinks are common in the marketplace and the prevalent understanding of the term in that context is that the 'diet' version of a soft drink has fewer calories than its 'regular' counterpart." *Id.* at 1230. The Ninth Circuit made clear that "[j]ust because some consumers may unreasonably interpret the term differently does not render the use of 'diet' in a soda's brand name false or deceptive." *Id.* Because the plaintiff "failed to sufficiently allege that reasonable consumers understand the word 'diet' in Diet Dr Pepper's brand name to promise weight loss," the Ninth Circuit determined that dismissal of the case was proper. *Id.* at 1231.

Applying *Becerra*, this Court concluded that Plaintiffs failed to adequately allege that the Product package is misleading to reasonable consumers based on the use of the words "white" and "premier." *See* Prior Dismissal Order at 6-8. This ruling was consistent with Judge Hamilton's dismissal of the labeling claims in *Cheslow*. *See Cheslow*, 2020 WL 1701840, at *5 ("Simply because some consumers unreasonably assumed that 'white' in the term 'white chips' meant white chocolate chips does not make it so.").

5

1   In the SAC, Plaintiffs again allege that they were misled by the words "white" and
2   "premier" on the Product package, and by the Product's placement next to chocolate baking chips
3   in grocery stores. SAC ¶¶ 5, 25. To address the Court's observation in its Prior Dismissal Order
4   that a third-party retailer's placement of a product cannot support a claim against a manufacturer,
5   Plaintiffs have added an allegation that, "Upon information and belief, Nestlé maintains control
6   over the placement of the Products within retail stores, including the stores where the named-
7   Plaintiffs purchased the Products." SAC ¶ 5. Plaintiffs also have added allegations that they were
8   misled by images on the Product package of a dark-colored cookie containing white morsels and a
9   scattering of white chip-shaped morsels. *Id.* And finally, Plaintiffs have added allegations about a
10  consumer survey, and have reproduced consumer complaints sent to their counsel and/or posted
11  on Nestlé's website. *Id.* at ¶¶ 10, 28-38.

12  These allegations are insufficient to state a claim under the reasonable consumer standard.
13  As discussed at length in the Prior Dismissal Order, the adjectives "white" and "premier" do not
14  denote "chocolate." The adjective "premier" is non-actionable puffery that does not bear any
15  specific relationship to chocolate. *Cf. Cheslow v. Ghirardelli Chocolate Co.*, 472 F. Supp. 3d 686,
16  692 (N.D. Cal. 2020) ("[T]he word 'premium' in the phrase 'Premium Baking Chips' constituted
17  puffery and was not actionable."). The adjective "white" is defined as follows: "having the color
18  of new snow or milk," and "light or pale in color." White, *Merriam-Webster.com Dictionary*,
19  https://www.merriam-webster.com/dictionary/white (last visited April 5, 2022). Nothing about
20  the ordinary and common meanings of the adjectives "white" and "premier" would suggest to a
21  reasonable consumer that the Product is white *chocolate*. Similarly, images of a cookie and white
22  morsels do not provide any information as to the substance of the morsels.

23  Plaintiffs argue that when viewed in context, the words "white" and "premier" do suggest
24  chocolate. Plaintiffs argue that the relevant context includes the Nestlé brand name and the
25  placement of the Product next to chocolate chips in grocery store baking aisles. Plaintiffs allege
26  "on information and belief" that Nestlé controls where the Product is placed in retail grocery
27  stores, but they do not provide any factual basis for that belief. Other courts in this district have
28  rejected allegations made on information and belief absent a factual basis for the belief. *See, e.g.,*

6

*Muench Photography, Inc. v. Pearson Educ., Inc.*, No. 13-CV-03937-WHO, 2013 WL 6172953, at *6 (N.D. Cal. Nov. 25, 2013) (a plaintiff relying on "information and belief" must state the factual basis for the belief). Even accepting at face value Plaintiffs' conclusory allegation regarding Nestlé's control over product placement, baking aisles contain a wide variety of non-chocolate baking chips. Similarly, Nestlé makes a wide variety of non-chocolate products. Thus, while the aspects of the Product packaging and placement highlighted by Plaintiffs suggest that the Product comprises white-colored baking morsels (which it does), none of those aspects suggest that the morsels are chocolate.

Plaintiffs rely on *Moore v. Mars Petcare* for the proposition that "brand names by themselves can be misleading in the context of the product being marketed." *Moore*, 966 F.3d at 1018 (internal quotation marks and citation omitted). In *Moore*, the plaintiffs alleged that the defendants violated the UCL, FAL, and CLRA through false and misleading advertising of prescription pet foods, including pet foods sold under the labels "Prescription Diet," and "Pro Plan Veterinary Diets." *See id.* at 1014-16. The plaintiffs claimed that they were misled to believe that the pet foods qualified as a drug or medicine, met a medical requirement for pets, had been evaluated by the FDA, required a prescription to purchase, and warranted a premium price. *See id.* at 1016. The Ninth Circuit found the plaintiffs' allegations sufficient to state a claim, because "[c]ommon sense dictates that a product that requires a prescription may be considered a medicine that involves a drug or controlled substance." *Id*. at 1018. The *Moore* court relied on the definition of the word "prescription," meaning "a prescribed medicine," to confirm a general understanding that a prescription refers to drugs for humans and pets. *Id*. The Ninth Circuit found that a brand name such "Prescription Diet" itself could be misleading, because a reasonable consumer would believe that the product contains drugs or a controlled ingredient. *See id.*

*Moore* is factually distinguishable from the present case. In *Moore*, the dictionary definition of a word used in the product name "Prescription Diet" supported a reasonable belief that the pet food contained a drug or medicine. In the present case, the dictionary definitions of the words used in the Product name "Nestlé Toll House Premier White Morsels" do not support a reasonable belief that the Product contains chocolate. As discussed above, neither the word

7

"white" nor "premier" is generally understood to mean chocolate. Plaintiffs argue that the word "Nestlé" in the product name brings the present case within the holding of *Moore*, because according to Plaintiffs "Nestlé" is synonymous with "chocolate." Plaintiffs do not, and cannot, cite a dictionary definition of "Nestlé" showing that the word is generally understood to mean "chocolate." As the Court observed at the hearing, it is common knowledge that Nestlé makes many products that do not contain chocolate.

In *Moore*, the Ninth Circuit applied "common sense" to conclude that the defendants' pet food labels could mislead reasonable consumers to believe that the pet food contains a drug or controlled substance. *See Moore*, 966 F.3d at 1018. Here, this Court applies common sense to conclude that Nestlé's labeling and advertising would not mislead a reasonable consumer to believe that the Product contains white chocolate. The Product labeling does not use the word "chocolate" or any other word that connotes chocolate. Plaintiffs' claims are based on the fact that the Product is sold by Nestlé, is in the form of white chip-shaped morsels, and is located in baking aisles. At bottom, Plaintiffs' position seems to be that Nestlé cannot sell white baking morsels without affirmatively clarifying that they are not chocolate. At the hearing, Plaintiffs' counsel suggested that Nestlé could label its Product as "encased in cream," or as a "vanilla morsel." Hrg. Tr. 15:22-16:1, ECF 92. Plaintiffs have not cited any case requiring that type of affirmative clarification where the label in question does not suggest chocolate content.

The Court finds unpersuasive Plaintiffs' argument that their claims should go forward in light of their survey showing that 95% of respondents believed that the Product contains white chocolate. SAC ¶ 10. "The survey cannot, on its own, salvage [Plaintiffs'] claim[s]." *Becerra*, 945 F.3d at 1231. In *Becerra*, the plaintiff offered a survey allegedly showing that "the vast majority of consumers expect a diet soft drink to either help them lose weight, or help maintain or not affect their weight." *Id*. at 1230. The Ninth Circuit held that, regardless of the alleged survey results, "a reasonable consumer would still understand 'diet' in this context to be a relative claim about the calorie or sugar content of the product." *Id*. at 1231. This Court likewise concludes that Plaintiffs have failed to plausibly allege that Nestlé's labeling and advertising would mislead a reasonable consumer to believe the Product contains white chocolate. "[I]f common sense would

8

not lead anyone to be misled, then the claim may be disposed of at a motion to dismiss stage." *Moore*, 966 F.3d at 1018.

Plaintiffs' reliance on *Naimi* and *Kwan* is misplaced. *Naimi* is an unpublished memorandum decision from the Ninth Circuit that pre-dates *Becerra*. *See Naimi v. Starbucks Corp.*, 798 F. App'x 67 (9th Cir. 2019). Moreover, in *Naimi* the plaintiffs offered a survey to bolster an otherwise plausible claim. *Id.* at 69 ("Plaintiffs have plausibly alleged that the product's label conveys the implied representation that each can of the beverage contains two shots of espresso brewed from the same beans Starbucks uses in its cafés."). As discussed above, Plaintiffs in this case have not alleged a plausible claim that the Product label conveys the implied representation that the Product contains white chocolate. In *Kwan*, the Ninth Circuit discussed the use of product testing to bolster a pleading; the case did not involve a consumer survey. *See Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1092 (9th Cir. 2017).

The Court concludes that Plaintiffs have failed to state a claim under the reasonable consumer test and will dismiss all claims of the SAC on that basis. Having reached this conclusion, the Court need not and does not address Nestlé's additional arguments based on the back label of the Product package and the asserted infirmities of Plaintiffs' consumer survey.

The motion to dismiss Plaintiffs' claims under the UCL, FAL, and CLRA is GRANTED.

**B.     Plaintiffs Fail to Allege Standing to Seek Injunctive Relief**

Nestlé also argues that Plaintiffs fail to allege facts establishing their standing to seek injunctive relief. The Court nonetheless touches on this issue only briefly in light of its dismissal of all claims for the reasons discussed above.

"A plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). To seek injunctive relief, Plaintiffs must show a likelihood that they will again be wronged absent an injunction. *See id.* The Court previously dismissed Plaintiffs' claim for injunctive relief because they did not allege facts showing they would be misled by Nestlé's labeling and advertising in the future. *See* Prior Dismissal Order at 10. Plaintiffs' allegations that they would purchase the Product if they could be sure it was white chocolate were insufficient, because the Court lacks

9

1   authority to compel Nestlé to make any particular product by way of an injunction.  *See id.*

2   Plaintiffs again allege that they "would purchase the Product as labeled in the future if it
3   actually contained white chocolate."  SAC ¶ 101.  That allegation is insufficient to confer
4   standing.  Plaintiffs add an alternative allegation that "Plaintiffs might purchase the Product in the
5   future if the labeling made clear that the Product did not contain white chocolate, but they would
6   only do so if the Product was sold for less money than presently priced at."  *Id.*  Plaintiffs have not
7   cited any authority suggesting that this Court could order Nestlé to decrease the price of its
8   Product to an amount Plaintiffs deem fair for non-chocolate baking morsels.

9   The motion to dismiss is GRANTED as to Plaintiffs' claim for injunctive relief.

### C. Leave to Amend is Not Warranted

Having determined that Plaintiffs' claims are subject to dismissal, the Court must decide whether leave to amend is warranted.  Leave ordinarily must be granted unless one or more of the following factors is present:  (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (discussing *Foman* factors).

The Court finds no undue delay (factor 1) or bad faith (factor 2).  However, despite the Court's prior order dismissing the FAC with guidance regarding amendment, Plaintiffs still have not alleged a viable claim (factor 3).  Granting further opportunity to amend would impose undue prejudice on Nestlé (factor 4) where it appears that amendment would be futile (factor 5).

The motion will be granted WITHOUT LEAVE TO AMEND.

### IV. ORDER

(1) Nestlé's motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND and the action is DISMISSED WITH PREJUDICE;

(2) This order terminates ECF 55.

Dated:  April 8, 2022

BETH LABSON FREEMAN
United States District Judge

10