1
2
3
4
5
6
7

United States District Court
Northern District of California

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

8
9
10

STEVEN PRESCOTT and LINDA
CHESLOW, individually and on behalf of
all others similarly situated,

Plaintiffs,

11

v.

12
13

NESTLÉ USA, INC.,

Defendant.

14
15

Case No.  19-cv-07471-BLF

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
RENEWED MOTION TO DISMISS
SECOND AMENDED COMPLAINT,
WITHOUT LEAVE TO AMEND**

[Re:  ECF 115]

16      Following remand by the United States Court of Appeals for the Ninth Circuit, this Court

17   addresses Defendant Nestlé USA, Inc.'s renewed motion to dismiss the operative second amended

18   complaint ("SAC") filed by Plaintiffs Steven Prescott and Linda Cheslow.  *See* Def.'s Renewed

19   Mot., ECF 115.  Plaintiffs assert putative class claims under California consumer protection

20   statutes based on allegations that Nestlé's labeling and advertising of its white baking chips

21   product, "Nestlé Toll House Premier White Morsels" (the "Product"), misleads consumers into

22   believing the Product contains white chocolate when it does not.  *See generally* SAC, ECF 54.

23   This Court previously granted Nestlé's motion to dismiss the SAC under Federal Rule of Civil

24   Procedure 12(b)(6) in a written order ("Dismissal Order") and entered judgment for Nestlé.  *See*

25   Dismissal Order, ECF 93; Judgment, ECF 94.  The grounds for dismissal were the Court's

26   determinations that the SAC does not allege facts showing (1) that a reasonable consumer is likely

27   to be deceived as required under applicable California substantive law, and (2) that Plaintiffs have

28   standing to seek injunctive relief.  *See* Dismissal Order at 9-10.

While Plaintiffs' appeal was pending in the Ninth Circuit, the California Court of Appeal issued its decision in *Salazar v. Walmart, Inc.*, 83 Cal. App. 5th 561 (2022) ("*Walmart*"), another consumer class action based on allegedly misleading labeling of white baking chips.  In *Walmart*, which involved facts similar to those in the present case, the California Court of Appeal determined that whether a reasonable consumer was likely to be deceived presented a factual issue for the jury that could not be resolved at the pleading stage.  *See Walmart*, 83 Cal. App. 5th at 569. The Ninth Circuit thereafter vacated the Dismissal Order in this case and remanded for this Court to consider the impact of *Walmart* on Nestlé's motion to dismiss the SAC.

Now before the Court is Nestlé's renewed motion to dismiss the SAC, in which Nestlé contends that *Walmart* has no impact on the analysis underlying the Court's prior Dismissal Order. The Court has considered the parties' briefing on the renewed motion, as well as the briefing on the original motion.  The Court finds that Nestlé's renewed motion to dismiss is suitable for decision without oral argument.  *See* Civ. L.R. 7-1(b).

Nestlé's renewed motion to dismiss the SAC is GRANTED IN PART, WITHOUT LEAVE TO AMEND, only as to Plaintiffs' claim for injunctive relief, and otherwise is DENIED.

## I.    BACKGROUND[1]

*Filing of Action and Operative SAC*

Plaintiffs filed this putative class action in the Santa Cruz County Superior Court.  *See* Not. of Removal, ECF 1.  After removal to federal district court and one round of motion practice, Plaintiffs filed the operative SAC asserting claims under California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies Act ("CLRA") based on the following allegations.  *See generally* SAC, ECF 54.

Plaintiffs purchased the Product in the belief that it contained white chocolate.  SAC ¶ 5. The SAC depicts the front of the Product package, which is a yellow bag bearing the following words and images:  "Nestlé" above a "TOLL HOUSE" logo; the words "PREMIER WHITE" above the word "MORSELS"; a dark-colored cookie containing white morsels; and a scattering of

---

[1] The facts alleged in the SAC are accepted as true for purposes of evaluating Nestlé's Rule 12(b)(6) motion.  *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

United States District Court
Northern District of California

white chip-shaped morsels.  *Id*. ¶ 1.  This package caused Plaintiffs to believe that the Product

contains white chocolate because:

> (1) the Product is labeled as "White," which, as described below, has been historically used to describe a distinct and real type of chocolate, and the understanding of both named-Plaintiffs is that the term "White" describes a distinct and real type of chocolate; (2) the Product label has pictures of what Nestlé intended to be white chocolate chips, and both named-Plaintiffs viewed these pictures and reasonably believed that they depicted white chocolate chips when they purchased the Product; (3) the Product label has pictures of what Nestlé intended to be white chocolate chip cookies, and both named-Plaintiffs viewed and relied on the depictions of white chocolate chip cookies when they purchased the Product; and (4) the Product was placed among other chocolate products, which further led the named-Plaintiffs to believe that they were purchasing white chocolate. Upon information and belief, Nestlé maintains control over the placement of the Products within retail stores, including the stores where the named-Plaintiffs purchased the Products.

*Id*. ¶ 5.  Elsewhere in the SAC, Plaintiffs allege that Nestlé labels its Product "'*Premier* White,'

misleading consumers into thinking that the Product contains premier ingredients, not fake white

chocolate." SAC ¶ 25.

Plaintiffs allege that a "widespread consumer study" shows among other things that

approximately 95% of respondents believed the Product contains white chocolate.  SAC ¶ 10 &

Exh. A.  Plaintiffs also reproduce numerous consumer complaints that were sent to Plaintiffs'

counsel and/or posted on Nestlé's website.  SAC ¶¶ 28-38.  Two common themes in the alleged

consumer complaints are that the consumers thought the Product contains white chocolate and the

Product does not melt like chocolate during baking.  *Id*.

Plaintiffs seek to represent a nationwide class or, alternatively, a California class of

persons who purchased the Product for personal consumption.  SAC ¶ 77.  They seek injunctive

relief and restitution pursuant to their claims under the UCL, FAL, and CLRA.  *Id*. ¶ 51.

*Prior Dismissal Order and Judgment*

On April 8, 2022, this Court issued its prior Dismissal Order granting Nestlé's motion to

dismiss the SAC without leave to amend.  *See* Dismissal Order at 10.  The Court determined that

Plaintiffs' claim under the UCL, FAL, and CLRA are governed by California's reasonable

consumer test, under which a plaintiff must show that members of the public are likely to be

deceived.  *See id.* at 4-9.  While acknowledging that application of the reasonable consumer test

United States District Court
Northern District of California

1   typically involves questions of fact that may not be resolved at the pleading stage, the Court

2   concluded that Plaintiffs have not alleged plausible claims under that standard.  *See id*.

3   Specifically, the Court found that Plaintiffs' allegations that they were misled by the words

4   "white" and "premier" on the Product package, and by the Product's placement next to chocolate

5   baking chips in grocery stores, were insufficient to state a claim under California's reasonable

6   consumer standard.  *See id.* at 6.  The Court reasoned that "[n]othing about the ordinary and

7   common meanings of the adjectives 'white' and 'premier' would suggest to a reasonable

8   consumer that the Product is white *chocolate*," and concluded that "images of a cookie and white

9   morsels do not provide any information as to the substance of the morsels."  *Id*.  The Court also

10  found that Plaintiffs have not alleged facts establishing standing to seek injunctive relief.  *See id.*

11  at 9-10.  The Court entered judgment for Nestlé simultaneously with dismissal of the SAC.

12  *Ninth Circuit's Decision Vacating the Dismissal Order and Remanding to this Court*

13  The California Court of Appeal issued its decision in *Walmart* while Plaintiffs' appeal of

14  this Court's Dismissal Order was pending.  In *Walmart*, the plaintiff claimed that he was misled

15  into thinking that Walmart-brand White Baking Chips contain white chocolate because (1) the

16  label describes the chips as "white," (2) the label depicts the product as looking like white

17  chocolate chips, and (3) the White Baking Chips are sold next to chocolate products.  *See*

18  *Walmart*, 83 Cal. App. 5th at 564-65.  The trial court sustained Walmart's demurrer, finding that

19  no reasonable consumer would believe the White Baking Chips contain white chocolate, and

20  entered judgment for Walmart.  *See id.* at 565.

21  The California Court of Appeal reversed, finding that the plaintiff stated viable claims

22  against Walmart under the UCL, FAL, and CLRA.  *See Walmart*, 83 Cal. App. 5th at 565.  The

23  Court of Appeal noted that whether a reasonable consumer is likely to be deceived generally is a

24  question of fact not appropriate for decision at the pleading stage, and that such claims may be

25  decided as a matter of law at the pleading stage "only in rare situation[s]."  *Id*. at 566-67 (internal

26  quotation marks and citation omitted).  After consulting dictionary definitions of "white," the

27  appellate court found that as used on the packaging of Walmart's product, "'white' could

28  reasonably be interpreted as an adjective describing the color of the chips," but "'white' also could

reasonably be interpreted as shorthand for 'white chocolate.'"  *Id*. at 569.  The Court of Appeal also found that:  "The White Baking Chips look like chocolate chips, they are sold next to other real chocolate chip products, and their label depicts them on cookies to show they can be used for baking like chocolate chips. . . .  "When viewed in that context, a reasonable consumer could reasonably be misled to believe that the chips are white chocolate chips[.]"  *Id*.

Characterizing *Walmart* as "a case involving materially identical facts, claims, and arguments" as the present case, the Ninth Circuit determined that the most appropriate course was to "vacate the district court's order granting Nestlé's motion to dismiss and remand for the district court to consider the *Walmart* decision in the first instance."  *Prescott v. Nestlé USA, Inc.*, No. 22-15706, 2023 WL 5346039, at *1 (9th Cir. Aug. 21, 2023).

*Post-Remand Proceedings*

Following remand, this Court reopened the present case and held a Case Management Conference ("CMC").  *See* Order Directing Clerk to Reopen Case, ECF 106; Minute Entry, ECF 111.  The Court advised the parties that it would entertain a renewed motion to dismiss the SAC, but limited the page limits for such motion and directed the parties to focus on the impact of *Walmart*.  *See* CMC Tr. 3:16-22, 7:14-21, ECF 116.  Nestlé's renewed motion to dismiss the SAC is fully briefed and ready for disposition.

## II.    LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim."  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.    DISCUSSION

In its renewed motion to dismiss, Nestlé contends that *Walmart* has no impact on the reasoning underlying this Court's prior Dismissal Order.  First, Nestlé argues that *Walmart* was decided solely under California's pleading standards, which Nestlé argues are less stringent that

federal pleading standards.  Nestlé urges the Court to dismiss the SAC once again on the ground that it fails to satisfy federal pleading standards.  Second, Nestlé contends that the California Supreme Court would not endorse *Walmart*, and that this Court therefore should decline to follow it.

In opposition, Plaintiffs argue that the *Walmart* decision was not grounded solely in pleading standards particular to California, but rather in the California Court of Appeal's application of the substantive reasonable consumer test to facts materially indistinguishable from the facts of the present case.  Consequently, Plaintiffs argue, *Walmart* impacts this case in Plaintiffs' favor.  Plaintiffs also contend that the California Supreme Court would endorse *Walmart* and that Nestlé has not offered any persuasive evidence that it would not.

The Court takes up these issues in turn.

**A.     Impact of *Walmart***

As to the impact of *Walmart* on the present case, a facial reading of the Ninth Circuit's remand order and the *Walmart* decision suggest that the impact is substantial.  This Court first discusses why that is so, and then it addresses Nestlé's contention that in fact *Walmart* has zero impact on the present case.

On their face, the claims asserted in *Walmart* appear materially indistinguishable from those asserted in the present case.  In *Walmart*, the plaintiff asserted claims under the UCL, FAL, and CLRA based on allegations that he was misled into thinking Walmart's white baking chips contain white chocolate because the label describes the chips as "white," the label depicts the product as looking like white chocolate chips, and the white baking chips are sold next to chocolate products.  *See Walmart*, 83 Cal. App. 5th at 564-65.  In the present case, Plaintiffs assert claims under the UCL, FAL, and CLRA based on allegations that they were misled into thinking Nestlé's white baking chips contain white chocolate because the Product is labeled as "white," the label depicts the Product as looking like white chocolate chips, and the Product is sold next to chocolate products.  *See* SAC ¶ 5.  In both cases, the packaging depicts a dark-colored cookie containing white chips.  *See Walmart*, 83 Cal. App. 5th at 564; SAC ¶ 1.  When remanding the present case, the Ninth Circuit characterized *Walmart* as "a case involving materially identical

facts, claims, and arguments" as the present case.  *Prescott*, 2023 WL 5346039, at *1.

As a federal court sitting in diversity over Plaintiffs' California state law claims, this Court must apply the same California substantive law as the *Walmart* court.  *See Prescott*, 2023 WL 5346039, at *1.  Thus, the UCL, FAL, and CLRA claims in both the present case and the *Walmart* case are governed by California's reasonable consumer test.  *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  In *Walmart*, the California Court of Appeal determined that under that test, the plaintiff's claims were not appropriate for decision at the pleading stage because the plaintiff had alleged facts showing that "a reasonable consumer could reasonably be misled to believe that the chips are white chocolate chips."  *Walmart*, 83 Cal. App. 5th at 569.  In its remand order to this Court, the Ninth Circuit opined that *Walmart*'s "application of California law is persuasive."  *Prescott*, 2023 WL 5346039, at *1.  If this Court were to follow *Walmart*'s "persuasive" application of California's reasonable consumer standard to the materially indistinguishable facts and claims in the present case, this Court likewise would conclude that the claims in the present case are not appropriate for decision at the pleading stage.

Nestlé contends that such an approach would be inappropriate, because (in Nestlé's view) the *Walmart* decision turned on the application of the particular procedural pleading standards governing California's demurrer process.  Nestlé argues that the *Walmart* court at most found the existence of an "ambiguity" in the product labeling, and based its decision on the "possibility" of consumer deception.  *See* Def.'s Renewed Mot. at 1-2.  Nestlé contends that the existence of an "ambiguity" in labeling, and the "possibility" of consumer decision are insufficient to state a claim under federal pleading standards.  *Id*.  Nestlé then devotes several paragraphs of its brief to the differences between the pleading standards governing demurrers in state court and motions to dismiss in federal court.  *See id*. at 2-5.

Nestlé's explication of the differences between state and federal pleading standards might be relevant if this Court concurred with Nestlé's reading of *Walmart*.  However, this Court cannot agree that the *Walmart* court's ruling turned on determinations that the labeling contained an "ambiguity" creating a mere "possibility" of consumer deception.  While the *Walmart* court did discuss the fact that intentional ambiguity in advertisements may be used to mislead consumers,

United States District Court
Northern District of California

the court's holding was not grounded solely in such an ambiguity but rather in several facts alleged about the product labeling:  that the word "white" on the label reasonably could be interpreted as shorthand for white chocolate; the white baking chips depicted on the package look like chocolate chips; the label depicts the chips being used in cookies like chocolate chips; and the product is sold next to real chocolate chip products.  *See Walmart*, 83 Cal. App. 5th at 569. Moreover, the *Walmart* court went far beyond finding the mere "possibility" of consumer deception, holding that the plaintiff "plausibly alleges that *a significant portion* of the general consuming public or of targeted consumers, *acting reasonably* in the circumstances, *could be misled* by the White Baking Chips' advertising."  *Id*. at 570 (internal quotation marks and citation omitted, emphasis added).

Nestlé argues that the *Walmart* court did not consider the full context of the product labeling, including information on the back label, as required under Ninth Circuit precedent. Nestlé cites *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1099 (9th Cir. 2023), for the proposition that when a front label is ambiguous, the ambiguity can be resolved by reference to the back label.  According to Nestlé, consideration of the back label would dispel any ambiguity on the front of its Product package, because the ingredient list on the back label makes clear that the Product does not contain chocolate.  Nestlé's argument suggests that reference to the back label is required under federal pleading standards and not under California pleading standards, and urges this Court to depart from *Walmart* on that basis.

Nestlé ignores *Walmart*'s express acknowledgement that reference to the back label is required under California law in certain circumstances.  *See Walmart*, 83 Cal. App. 5th at 567. The *Walmart* court noted that reference to the back label is *not* required when there are misleading representations on the front label, however, citing the Ninth Circuit's decision in *Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016) for the proposition that "if 'the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception.'" *Walmart*, 83 Cal. App. 5th at 567 (quoting *Ebner*, 838 F.3d at 966)).  The *McGinity* court quoted the identical language from *Ebner* in discussing the relevance of the back label:  "if a defendant does commit an act of deception on the front of a product, then 'the presence of fine print

1  revealing the truth is insufficient to dispel that deception.'"  *McGinity*, 69 F.4th at 1098 (quoting

2  *Ebner*, 838 F.3d at 966)).

3       Upon a more developed record, the holding in *McGinity* may provide a more persuasive

4  argument for Nestlé.  At this juncture, however, the Court is not prepared to determine as a matter

5  of law that "Premier White Morsels" on the front packaging is merely ambiguous rather than "an

6  act of deception," thus compelling the consumer to also read the back label.  Nor is the Court

7  prepared to determine as a matter of law whether reference to the back label of the Product "can

8  ameliorate any tendency of a label to mislead."  *McGinity*, 69 F.4th at 1097-98.

9       In summary, this Court is wholly unpersuaded by Nestlé's argument that *Walmart* may be

10  disregarded on the basis that it was grounded in legal standards that are not applicable here.  In

11  this Court's view, *Walmart* was decided under the same substantive California law that this Court

12  must apply in the present case.  Moreover, the Ninth Circuit clearly indicated that this Court

13  should follow *Walmart*'s "persuasive" application of California's reasonable consumer standard

14  absent a determination that the California Supreme Court would not endorse *Walmart*.

15       **B.**     **Likelihood that California Supreme Court Would Endorse Walmart**

16       "In discerning California law, [d]ecisions of the California Supreme Court, including

17  reasoned dicta, are binding on us as to California law."  *Tompkins v. 23andMe, Inc.*, 840 F.3d

18  1016, 1023 (9th Cir. 2016) (internal quotation marks and citation omitted, alteration in original).

19  However, federal courts "generally will follow a published intermediate state court decision

20  regarding California law unless . . . convinced that the California Supreme Court would reject it."

21  *Id.* (internal quotation marks and citation omitted).  In its remand order, the Ninth Circuit directed

22  this Court to "consider the impact of [*Walmart*] – specifically, whether there is any convincing

23  evidence that the California Supreme Court would decide the issue differently than the California

24  Court of Appeal did in *Walmart*."  *Prescott*, 2023 WL 5346039, at *1.

25       Nestlé contends that the California Supreme Court would not endorse *Walmart* because it

26  misstates California law.  *See* Def.'s Renewed Mot. at 5.  For example, Nestlé asserts, *Walmart*

27  rested on a "possibility of deception" standard that is contrary to California law.  As discussed

28  above, Nestlé mischaracterizes *Walmart*, which was not based on a mere possibility of deception.

1    Nestlé also argues that *Walmart* conflicts with California law holding that a company cannot be

2    liable for false advertising absent a false or misleading statement by the defendant.  It is true that

3    California law imposes liability under the consumer protection statutes at issue only when the

4    defendant engages in advertising which is "false" or advertising which, although true, "is either

5    actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the

6    public."  *Williams*, 552 F.3d at 938 (internal quotation marks and citation omitted).  The Court is

7    at a loss to understand how *Walmart* may be viewed as conflicting with California law, however,

8    as the *Walmart* court expressly cited *Williams* and determined that a significant portion of

9    consumers reasonably could find the packaging at issue to be misleading.  *See Walmart*, 83 Cal.

10   App. 5th at 566, 570.

### C.    Conclusion re UCL, FAL, and CLRA Claims

12           After considering the parties' arguments, this Court concludes that the Supreme Court

13   would endorse the California Court of Appeal's application of California law in *Walmart*, and that

14   under *Walmart* it is inappropriate to determine as a matter of law at the pleading stage that

15   reasonable consumers could not be misled by the labeling of Nestlé's white baking chips Product.

16   Accordingly, Nestlé's renewed motion to dismiss the claims of the SAC is DENIED.

17           The Court questions whether it has jurisdiction over Plaintiffs' claim for equitable relief

18   under the UCL in light of their claim at law under the CLRA.  *See Guzman v. Polaris Indus. Inc.*,

19   49 F.4th 1308, 1311 (9th Cir. 2022), *cert. denied sub nom. Polaris Indus. Inc. v. Albright*, 143 S.

20   Ct. 2612 (2023) (holding that plaintiff "could not bring his equitable UCL claim in federal court

21   because he had an adequate legal remedy" in his CLRA claim even though the CLRA claim was

22   time-barred); *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (holding a

23   plaintiff must establish lack of adequate remedy at law before securing equitable restitution for

24   past harm).  That is an issue for another day, however.

### D.    Injunctive Relief

26           Nestlé devotes a single sentence of its briefing to the issue of injunctive relief, asserting

27   that "*Walmart* has no bearing on this Court's consideration of Nestlé's motion to dismiss,

28   including as to injunctive relief[.]"  Def.'s Renewed Mot. at 2.  Plaintiffs do not address the issue

United States District Court
Northern District of California

10

of injunctive relief at all.

The Court agrees with Nestlé that Walmart does not call into question this Court's conclusion in its prior Dismissal Order that the SAC fails to allege facts establishing Plaintiffs' standing to seek injunctive relief. "A plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). To seek injunctive relief, Plaintiffs must show a likelihood that they will again be wronged absent an injunction. *See id.* Plaintiffs allege that they "would purchase the Product as labeled in the future if it actually contained white chocolate," and that they might purchase the Product in the future if the labeling made clear that the Product did not contain white chocolate, but they would only do so if the Product was sold for less money than presently priced at." SAC ¶ 101. Those allegations are insufficient to confer standing. Plaintiffs have not cited any authority suggesting that this Court could order Nestlé to include white chocolate in its Product, or to decrease the price of its Product to an amount Plaintiffs deem fair for non-chocolate baking morsels. Nestlé's renewed motion to dismiss is GRANTED as to Plaintiffs' claim for injunctive relief.

## IV.   ORDER

(1)   Nestlé's renewed motion to dismiss the SAC is GRANTED IN PART, WITHOUT LEAVE TO AMEND, only as to Plaintiffs' claim for injunctive relief, and otherwise is DENIED.

(2)   Nestlé shall file its answer within 30 days.

(3)   This order terminates ECF 115.

Dated:  April 12, 2024

_____
BETH LABSON FREEMAN
United States District Judge